Dureee, Judge,
delivered the opinion of the court:* This is a civil pay case in which this court has held[1] that, although there were issues of fact on the merits of whether plaintiff’s services as an employee of the Veterans Administration were terminated by defendant as required by law, these issues of fact did not have to be resolved because *546 plaintiff did not exhaust her administrative remedy. The court stated, in conclusion, at pp. 939 — 40:
* * * In the case before us, it makes little difference how these issues of fact are resolved, as plaintiff did not exhaust her administrative remedy.
Plaintiff appealed her case to the Appeals Examining Office of the Civil Service Commission on October 17, 1963, more than two years from the time she had actually performed any work at Mt. Alto. On December 13,1963 a decision was rendered which held (1) plaintiff voluntarily resigned her position on October 23, 1961, and had no right to appeal such voluntary resignation, and (2) even had the separation been accomplished involun-tarily2 the Commission would have denied the appeal since it was untimely. This decision was affirmed by the Board of Appeals and Review on January 16, 1964. In effect, plaintiff was told that even if the Civil Service Commission had been able to agree with plaintiff’s version of the facts, no relief could be afforded plaintiff, due to the untimeliness of the appeal. This court has often held that an untimely appeal to the Civil Service Commission constitutes a failure to exhaust an administrative remedy. Gertrude M. Hutton v. United, States, 154 Ct. Cl. 34 (1961)); MoDougal v. United States, 138 Ct. Cl. 90, 149 F. Supp. 651 (1957); Adler et al. v. United States, 134 Ct. Cl. 200, 146 F. Supp. 956 (1956), cert. denied, 352 U.S. 894 (1956). Further, the evidence does not warrant a holding that plaintiff possessed a reasonable excuse for not making the timely appeal. Viewing the facts most favorably to plaintiff, it would seem that at the latest, plaintiff realized the totality of her predicament on July 20,1962, when she was advised by the Hospital Director to seek employment elsewhere. Plaintiff did not appeal to the Commission until 15 months later, and gives no valid reason for such a lengthy delay.
It is therefore held that plaintiff, having failed to exhaust her administrative remedy, cannot recover. * * *
Thereafter, the court granted plaintiff’s motion for rehearing, and returned the case to the Trial Commissioner on the sole question of whether plaintiff exhausted her administrative remedies in a timely manner.
The pertinent provisions of the Federal Personnel Manual (Part 9 — Separation, Suspension and Demotion, effective February 10,1961) are fully set forth in the Commissioner’s findings. Subpart C — “Appeals to the Commission”, pro *547 vides that an appeal to the Civil Service Commission “may be submitted at any time after notice of adverse decision but not later than ten (10) days after the effect of the adverse decision.”
Although the court has often held that an untimely appeal to the Civil Service Commission constitutes a failure to exhaust an administrative remedy, failure to appeal within ten days, as hereinabove provided by the regulation, is not in itself a jurisdictional bar on the question of the timeliness of appeal.
Clearly, as we found before, plaintiff realized the totality of her predicament by July 20,1962. Only five days later, on July 25, 1962, she -appealed to President John F. Kennedy by a letter in which she stated her urgent need because she was unemployed, “after a forced resignation from the Veterans Administration on October 23, 1961.” She requested an interview to ask help and guidance since- “every path is blocked for reinstatement in the Federal Government.” She expressed confidence that the President could remove all barriers to her becoming again a useful citizen. She also stated that she had followed all channels of appeals within the Federal Government. This letter is set forth in full in the Commissioner’s findings. The letter to the President was referred to the Civil Service Commission for consideration of matters “within the Commission’s jurisdiction.” The Commission wrote to plaintiff on August 9, 1962 acknowledging this referral, and advised that “further consideration will be given to your communication” when the files were received, and plaintiff would be advised.
Thereafter, plaintiff again wrote to the President on September 11, 1962 and on October 10, 1962. Those letters were also referred to the Civil Service Commission, which advised plaintiff that it could not effect reinstatement of a person in another agency. Throughout this correspondence and oral interviews with plaintiff, it is apparent that the Commission premised its advice to plaintiff on its understanding that she had voluntarily resigned her employment, and was seeking reinstatement of her employment by the Veterans Administration.
*548 Later, on June 23, 1963 plaintiff wrote the Appeals Examining Office of the Civil Service Commission, requesting review of her records at the Veterans Administration.
In August 1963, plaintiff talked with an appeals examiner at the Appeals Examining Office of the Civil Service Commission. She indicated that she had been the subject of a removal action in 1961, and was advised that an appeal from such an adverse action must be filed within ten days, and if not, a written explanation must be given for the delay. She had similar interviews with a trial attorney in the office of the General Counsel of the Civil Service Commission in October 1963.
On October 17, 1963 she wrote to the Board of Appeals and Beview of the Civil Service Commission and requested “an appointment for appeal on an adverse decision by the Veterans Administration * * This letter of October 17, 1963 is the communication which we previously held was plaintiff’s untimely appeal to the Civil Service Commission.
We conclude that plaintiff’s letter to the President on July 25,1962, within five days after she was advised by the Veterans Administration office to seek employment elsewhere, was a timely appeal. The referral by the President to the Civil Service Commission of this letter was clear notice that plaintiff was appealing the agency decision in her case, as provided under section 9.301 of the Federal Personnel Manual, supra.
In accordance with the terms of our order for rehearing, we conclude that plaintiff did file a timely appeal from the adverse decision of the Veterans Administration. Accordingly, the case is remanded to the Trial Commissioner for a new trial on the merits of the separation of plaintiff from her employment by the Veterans Administration, and the denial of her appeal by the Civil Service Commission.
FINDINGS OF FACT
The court, having considered the evidence, the report of Trial Commissioner Bichard Arens, and the briefs and argument of counsel, makes findings of fact as follows:
1. This is a civil pay case in which this court held, on cross-motions for summary judgment, that plaintiff, having *549 remedy, could not recover[2]; but thereafter the court granted plaintiff’s motion for rehearing and returned the case to the trial commissioner for trial on the question of whether or not plaintiff exhausted her administrative remedies.
2. (a) In January 1942, plaintiff, a non-veteran who was born in August 1909, and is a citizen of the United States and a resident of the District of Columbia, began her employment with the Government as a clerk-typist, classified as CAF-1.
(b): On May 4,1948, she was reinstated in the Insurance Section of the Veterans Administration in Washington, D.C.; effective February 28, 1958, and continuously thereafter until July 5, 1961, she was employed as clerk-typist, Eegistrar Division, Mount Alto Hospital, grade GS-3.
(c) Effective July 5, 1961, and continuously thereafter, so long as she was in the permanent employ of the Veterans Administration, except for the period from August 1 through August 3, 1961, inclusive, the Veterans Administration discontinued payments of any salary to plaintiff and placed her on leave designated AWOL.
3. (a) Under date of July 10, 19,61, G. T. Weightman, Chief, Eegistrar Division, Veterans Administration, Mount Alto Hospital, issued to plaintiff a Notice of Proposed Ee-moval charging her with insubordination and absence without leave. The notice further stated:
5. The final decision to effect the action proposed has not been made. The Manager, who will make the final decision, will give full and impartial consideration to your reply, if a reply is submitted, and to the facts developed at the hearing, if a hearing is held.
6. If it is the decision of the Manager that you be removed, your removal will be effective not less than 30 days from the date after the date of receipt of this notice.
7. You will be retained in an active duty status during the period of advance notice.
(b) Shortly after receiving the Notice of Proposed Be-moval, she consulted with her counsel who prepared an an *550 swer setting forth her objections to the proposed removal.
(c) On July 17,1961, plaintiff, through her counsel, filed the answer.
(d) On July 28, 1961, she was formally notified by S. A. Harbour, Jr., Chairman, Employee Hearing Panel, that the hearing on the proposed removal was scheduled for August 2, 1961, at Mount Alto Hospital.
(e) On August 2 and 3,1961, the hearing was conducted on plaintiff’s proposed removal. She was represented at the hearing by her counsel and was furnished eight hours paid administrative leave on each day to participate in the hearing.
4. (a) Under date of October 12,1961, Dr. T. J. Ready, director of Mount Alto Hospital, sent to plaintiff a letter, which read:
1. In connection with the letter of July 10, 1961, in which you were given advance notice of your proposed removed, a final decision has been reached. The report of the Employee Hearing Committee substantiated the changes in connection with your proposed removal. However, the committee taking into consideration your many years of service stated that it felt the removal action was too severe. It was the committee’s recommendation that you be given an opportunity in another position of comparable grade and salary. While not condoning your actions, I, too, am influenced by your many years of service and have therefore concurred in the recommendation of the Hearing Committee that you be given another chance.
2. In reaching the decision I have carefully considered the transcript of your hearing appeal and the recommendation of the Employee Hearing Panel that heard the case.
3. Therefore, it is requested that you report to Mr. Gordon T. Weightman, Chief, Registrar Division, this hospital, as soon as possible to discuss your reassignment prospects. At that time we will expect you to indicate, m writing, your acceptance or rejection of the reassignment offer.
4. I wish to point out that my decision in this case does not condone your past conduct and performance of duties which lead up to this proposed removal. As you know refusal to carry out assigned tasks is a most serious matter. It is hoped that you will benefit from this action *551 in your favor and carefully observe the rules and regulations that give equal and fair rights to all employees.
(b) At the trial, there was uncontradicted testimony by an expert on Civil Service Commission regulations, and defendant concedes, that the foregoing letter of October 12, 1961, did not constitute an adverse action within the meaning of Commission regulations and accordingly did not present a matter appealable to the Commission.
5. (a) At the trial, plaintiff testified that promptly after receiving the foregoing letter of October 12, 1961, she went to the office of Mr. Gordon T. Weightman, chief of the Registrar Division, for reassignment, but was told that there was no position available; and that at least every two weeks after receiving the letter, and until July 20,1962, she either telephoned or visited Mr. Weightman’s office or the personnel office seeking reassignment, but was on each occasion told that no position was available.
(b) Neither Mr. Weightman nor anyone from his office was called to testify in the case nor was any explanation given for the failure to call him or any person from his office.[3]
6. (a) On October 23,1961, plaintiff, who was in desperate need for money, telephoned Mr. Donald Kinsinger, the personnel director at Mount Alto Hospital.
(b) At the trial, plaintiff testified that she inquired of Mr. Kinsinger regarding the manner in which she could receive payment for unused annual leave, and that, thereafter, at the request of Mr. Kinsinger, she signed Standard Form 52, Request for Personnel Action, in blank in order to receive a check ■('which she did thereafter receive) for the unused annual leave. Mr. Kinsinger testified that plaintiff did not mention unused annual leave in the conversation, but inquired if the AWOL with which she had been charged could be changed to sick leave, that he advised her that it could not, and that plaintiff then “indicated that she was resigning her position.”
(c) On the same date, October 23, 1961, Mr. Kinsinger sent to plaintiff a letter which read:
*552 This will acknowledge our telephone conversation today in which yon submitted your resignation for the reason: “Resigned with prejudice toward Mrs. Mauney.” Your resignation has been accepted and will be effective October 23, 1961, for the reason stated above.
We are enclosing for your benefit SF-8, “Notice to Federal Employee about Unemployment Compensation”; SF 55, “Notice of Conversion Privilege”; and SF 2802, “Application for Refund of Retirement Deductions”.
Also enclosed is copy of SF 52, “Request for Personnel Action”, which you should sign on the reverse side in the space indicated by a red “x”. We would appreciate return of this form as soon as possible. However, your resignation will be accomplished today based on your telephonic request.
For your information, if you have been issued any hospital items such as keys, books, etc., it is suggested that you arrange for their return in order not to delay issuance of your final check.
(d) Effective the same date, Standard Form 52, Request for Personnel Action, signed (thereafter) by plaintiff, was processed by defendant. The form, as filled out, under the heading “Nature of Action,” contained the handwritten word “Resignation” and a handwritten footnote reference “See letter dated 10/23/61,” with initials of an official of the personnel office at Mount Alto Hospital.
(e) Effective the same date, Standard Form 2810, “Change in Enrollment Status — Health Benefits,” was signed by Mr. Kinsinger. As filled out the form revealed termination of plaintiff’s health benefits, and that a duplicate of the form was mailed to plaintiff on November 12, 1961.
(f) On the same date, plaintiff telephoned the office of Dr. Ready and talked with his secretary, Mrs. F. Fort, who prepared a Report of Contact which read:
October 23, 1961
Miss Gernand called this morning and asked to speak with Dr. Ready. When told he was busy she said that she knew he was busy, he was always too busy to talk with her. When asked if I might take a message Miss Gernand went into the following story.
She said she had resigned from the hospital this morning but she still feels she should be granted sick leave *553 she has been out. She went on to say that she has been seeing her doctor regularly and he had sent a statement to the hospital that she was not able to work. When reminded that Dr. Kurland, Personnel Physician, had determined that she was able to work she insisted that he could not possibly have said that in good faith because when he examined her he said it would be three days before he received the X-rays and he called her the next morning and told her that he felt she was able to work. She said Dr. Kurland admitted that he had been directed by management to make that determination.
There was a good deal more conversation but the main point was that Miss Gernand feels she should be granted sick leave for the time she has 'been out. She said Mr. Simpson has in his office a statement from her doctor stating she has been unable to work.
I asked if the reason she resigned is that she is unable to work. She said no, there were other reasons, she is resigning with prejudice but that would all be explained when she returns her Form 52 which Mr. Kinsinger is sending her today. She mentioned that she is the fifth person whose career Mrs. Mauney has ruined. She added that she had been forced to resign.
At the end of the conversation I told Miss Gernand I would pass along the information she had furnished and he and Mr. Kinsinger would be talking on the subject later.
7. On October 26, 1961, plaintiff again telephoned Mr. Kinsinger, the personnel director, and stated, among other things, that she would not sign the Standard Form 52, Request for Personnel Action, which had been mailed to her on October 23,1961. Mr. Kinsinger then stated that plaintiff was no longer on defendant’s rolls, since her telephonic resignation of October 23, 1961, had been processed. Plaintiff then stated that she had her fill of Government service and would not seek reemployment with the Government. Thereafter, as heretofore indicated, she signed the form.
8. (a) During November 1961, plaintiff continued her periodic telephone calls or visits to the hospital seeking employment. At the trial, she used interchangeably the words employment, reemployment, reinstated, and reassigned.
(b) On November 21, 1961, plaintiff, in severe financial straits, conferred with a claims examiner for the Civil Serv *554 ice retirement fund respecting withdrawal of the money which she had in the fund. She advised the examiner that she had been employed from May 5, 1948 until October 23, 1961, at the Mount Alto Hospital.
(c) On December 5,1961, plaintiff signed Standard Form 2802, Application for Refund of Retirement Deductions, and on December 18, 1961, 'a check for retirement deductions in the sum of $3,120.87 was prepared for plaintiff by the United States Treasury Department and was cashed by her on December 20,1961.
9. (a) On July 19,1962, plaintiff addressed to Dr. Ready a letter which read:
May I ask you to consider giving me an opportunity to once again work with you.
I have learned that the former difficulty — in iny case — no longer exists and I am willing to try again to prove to you my ability to perform a satisfactory job standard.
If you feel uncertain in any way I will ask only for a temporary appointment or on a probationary basis.
I will appreciate your decision in this matter, Dr. Ready, and hope to hear from you hi the near future.
(b) On July 20, 1962, in response to plaintiff’s letter of July 19,1962, Dr. Ready addressed to plaintiff a letter which read:
Thank you for your letter of July 19 expressing interest in reemployment at this hospital. I want you to know that we have given this matter very careful consideration in the light of your employment record 'both here and elsewhere.
We earnestly feel that your prospects for a satisfactory employment situation would be better in other than a hospital setting. We do hope that any effort that you may make to secure such an assignment will be successful and will afford you the opportunity to make good use of the experience which you have acquired in the course of your career.
(c) No one at Mount Alto Hospital ever advised plaintiff of any appellate remedies which were available to her and she knew of no such remedies.
*555 10. (a) On July 25,1962, plaintiff addressed to President Jobm F. Kennedy a letter which read:
Dear President Kennedy:
I would not presume to impose upon your valuable time if there were any way to solve this problem. May I be given an interview of not more than fifteen minutes with you to ask your help and guidance ?
My need is urgent as I am unemployed after a forced resignation from Mt. Alto Veterans Hospital on October 83,1961.
I have followed all channels of appeals within the Federal government. I have received Unemployment Compensation but my time limit will soon be completed. I have not been given an interview for a Federal government position during this time through the United States Employment Service.
I am 52 years of age and have been employed in the Federal government for nineteen and one-half years. Thirteen and one-half of these years have been with the Veterans Administration.
At this point, with detrimental memorand/wms placed in my personnel folder, every path is blocked for re-in-statement in the Federal government and I have neither the advantage of youth or the specialized skills to compete for employment in private industry.
I am confident, President Kennedy, you can remove all barriers and help me to once again become a useful citizen.
(b) On July 30, 1962, the foregoing letter was received in the Appeals Examining Office of the Civil Service Commission.
(c) On August 9,1962, Mr. Kimbell Johnson, Director of the Bureau of Personnel Investigations of the Civil Service Commission, addressed to plaintiff a letter which read:
Your letter of July 25, 1962 to the President of the United. States has been referred to the Civil Service Commission for consideration of matters within the Commission’s jurisdiction.
In order to fully reply to your letter it has been necessary to request certain files which are not normally maintained in this office. When these files have been *556 received, further consideration will be given to your communication and you will be advised.
11. In the late summer or early fall of 1962, plaintiff made the first of several visits to the Bureau of Personnel Investigations of the Civil Service Commission “to get reassigned” to her position at Mount Alto Hospital. On several occasions she was given oral advice “of the steps she might take in seeking further Federal employment.” This advice was premised on the understanding of the Bureau, derived from plaintiff’s personnel folder, that she had voluntarily resigned her employment at Mount Alto Hospital.
12. (a) On September 11, 1962, plaintiff addressed to President John F. Kennedy a second letter which read:
Dear President Kennedy,
In reference to my letter of July 25,1962 and a reply from the Civil Service Personnel Investigation Section dated August 9,1962, signed by Mr. Kimball Isic] Johnson, may I respectfully ask for a few minutes of your valuable time in this matter.
I have been informed that my Persoimel Folder as yet has not been received from the Eecords Center in St. Louis, Missouri.
When this folder is received however, I have been informed that the Personnel Investigation Section of the Civil Service Commission does not have jurisdiction on an investigation of this case or the authority to offer a re-instatement in the Federal government.
In these fourteen months of imemployment every avenue of Federal government employment has been closed to me despite the fact that I am a permanent career employee with satisfactory efficiency ratings in my 19y2 years of employment in the Federal government.
I have exhausted the funds of my Civil Service Ketirement and my Unemployment Compensation has also ended after the duration of the allotted time period.
I will deeply appreciate any time you may have for this matter, President Kennedy, as my need for re-in-statement to complete my government career is urgent. *557 is made to your letters of July 25 and September 11, 1962, to the President of the United States, regarding your interest in Federal employment.
*556 (b) On September 24, 1962, Mr. John W. Macy, Jr., Chairman of the Civil Service Commission, addressed to plaintiff 'a letter which read:
*557 A review of your Official Personnel File reflects that in a letter to you dated July 10, 1961, you were notified that the Veterans Administration Hospital, Washington, D. C., proposed to effect your removal from the position of Clerk-Typist at the hospital. Your appeal of the agency’s proposed removal action was considered by the Employee Hearing Committee. On October 12, 1961, you were advised that the Committee substantiated the charges of insubordination as outlined in the letter of July 10, 1961, referred to above, but recommended that you be reassigned to another position of comparable grade and salary in the agency. In the same letter you were requested to report to the Chief, Eegistrar Division at the Veterans Administration Hospital 'as soon as possible to discuss your reassignment prospects.
The file further reveals that your voluntary resignation from the position of Clerk-Typist at the Veterans Administration Hospital, Washington, D.C., on October 23, 1961, was 'accepted by the agency on that date.
The authority for change or amendment of an official permanent record in the personnel file rests with the agency which prepared the document and placed it in the file.
The file also reveals that in view of your previous Federal service, you have basic eligibility for reinstatement and may be considered for further employment in any position in the competitive Federal service for which you can meet the qualifying requirements.
For your information, there is attached CSC Form 532 which contains general information about reinstatement and may be of interest to you. Your attention is invited in particular to Paragraph 12, “Procedure in Seeking Bemstatement,” which explains the functions of the Civil Service Commission and the authority of employing agencies in these matters. You will note that by law, the power of appointment rests with the agency and that the Civil Service Commission cannot effect the reinstatement of a person in another agency.
In addition, if you wish to increase your employment opportunities in the Federal service, you may desire to file applications for any position for which you can meet the requirements set forth in examination announcements. In this connection, there is attached CSC Form
*558 35, which contains general information regarding examinations and appointments which may be of interest to yon.
13. (a) On October 10, 1962, plaintiff addressed to President John F. Kennedy a third letter which read:
I am deeply sorry to have to write you this letter but I am confident you will try to help me.
My initial letter of July 25,1962 and another letter subsequent to this letter have, it is true been received by the Civil Service Personnel Investigation Commission. I have had interviews with officers in this section and a letter from Mr. John Macy, but to be very frank with you, President Kennedy, as far as actual help to me with my problem of government re-instatement, the letters were merely “ink on paper.” They have given me no practical solution to my problem, they have not investigated the source of my one year of total unemployment and the fact that a totally incompetent Federal government supervisor should remain on the pay roll while myself, and five others in her section, should be out of work.
I have spent my government retirement money. I am no longer eligible for unemployment compensation, every government agency literally shuns me or states there must be a security check (with 19% years of satisfactory service and efficiency ratings) until now I have reached the end. I have only one hope, because, clerical help is needed so badly, and that is Saint Elizabeths Hospital, but even there 1 must pass a GS-2 examination for Nurses Aid if I am not accepted in my present capacity as GS-3 Clerk-Typist.
How can a civil servant serve his government when treatment like this is allowed? Please, President Kennedy, I humbly beg you to investigate the situation at Mt. Alto Hospital, the direct source of the loss of my livelihood.
To make this situation clearer and briefer for you my attorney, Mr. Ellsworth T. Simpson 815 15th Street, (ST. 3-3250) has each detail pin pointed and will give you every assistance to save your time and effort.
Please try to help me though, President Kennedy, as this situation is not only unfair but truly disgraceful in the Federal government.
This is a hardship to my direct family as my aunt, a retired government worker of 80 years of age is trying *559 to help me with rent money until I can get back to work. Thank you for any assistance you can give me.
Again I am sorry -to worry you, but maybe by fate this situation when cleared up will help to solve others that may arise.
(b) On October 15,1962, the foregoing letter was received by the Civil Service Commission.
(c) On October 19,1962, plaintiff took a nursing assistant Civil Service examination and was rated eligible, subject to passing an oral interview.
(d) On November 7,1962, Mr. Kimbell Johnson, Director of the Bureau of Personnel Investigations of the Civil Service Commission, addressed to plaintiff a letter which read:
Reference is made to your recent letter to the President of the United States, which has been referred to the Commission for consideration of matters coming within its jurisdiction.
.The Commission’s jurisdiction in the matter of civil service employment was explained to you in our letter of September 24,1962.
The President of the United States has charged the heads of the various departments and independent agencies with the sole responsibility for personnel administration. This includes such matters as proper official conduct of supervisory personnel and the handling of employee grievances concerning it. Any statements or complaints you wish to have considered in connection with your former supervisor should be addressed to the proper officials of the Veterans Administration as an internal administrative matter. The Civil Service Commission may not investigate the conduct of incumbent employees of other agencies.
By law the power of appointment is vested solely with the head of the employing agency subject only to the provisions that appointment must be made in accordance with the regulations prescribed by the Commission. The decision of an agency not to appoint you to a position is an administrative decision within the jurisdiction of that agency, not subject to investigation or review by the Commission.
(e) On December 12,1962, plaintiff took a nursing assistant Civil Service examination and was rated eligible, subject to passing an oral interview.
*560 14. (a) On January 11, 19,63, plaintiff took a nursing assistant Civil Service examination at Mount Alto Hospital and was rated eligible, subject to passing an oral interview.
(b) On June 25, 1963, plaintiff addressed to tbe Appeals Examining Office of tbe Civil Service Commission a letter wbicb read:
May I respectfully request tb'at my records of hearings on Eeprimand and charges of insubordination and AWOL from a decision entered March 1, 1961 by Dr. Thomas J. Eeady at Mt. Alto Veterans Hospital, 2650 Wisconsin Ave N.W. Wash. 7 DC and a subsequent resignation on October 23,1961 resulting from this action be carefully reviewed ?
The transcripts of my hearings conducted by my attorney, Mr. Ellsworth T. Simpson are on file at Mt. Alto Hospital.
I am unemployed in spite of the fact my Personnel Folder has been reviewed by Mr. Kimbell Johnson of the Civil Service Personnel Investigation section and Mr. John Gleason, Director of Veterans Administration.
My record is cleared for either re-instatement or Federal Competative [sic] examinations. In reference to the competative [sic] examinations, you will note that I have passed these examinations but have not been granted even an oral interview.
Will you kindly consider my case especially, as my financial situation is quite desperate and I need employment. Thank you.
(c) On June 26,1963, the foregoing letter was received by the Appeals Examining Office of the Civil Service Commission.
(d) On July 29, 1963, plaintiff took a laboratory and clinical aid Civil Service examination and was rated ineligible.
(e) In August 1963, plaintiff visited the Appeals Exam-ing Office of the Civil Service Commission where she talked with Mr. Michael Sedmack, an appeals examiner. She indicated that she had been the subject of a removal action at Mount Alto Hospital in 1961. Mr. Sedmack advised her that while his office had jurisdiction over a removal action, the regulations provided that an appeal from such an ad *561 verse action must be filed within. 10 days, and that if it is not so filed, tbe concerned employee must give a written explanation for the delay. Sometime later, Mr. Sedmack reviewed plaintiff’s personnel folder and concluded that his office did not have jurisdiction to entertain an appeal in her case because the file reflected that she had voluntarily resigned her employment at Mount Alto Hospital.
(f) In the middle of October 1963, plaintiff visited the office of the General Counsel of the Civil Service Commission where she talked with Mr. Burton McDonald, a trial attorney, who concluded from what she told him that she had been removed from her employment 'at Mount Alto Hospital. He then discussed with her the timeliness of her appeal, the question of exhaustion of her administrative remedies and advised her regarding appellate procedure. Thereafter, plaintiff talked with Mr. McDonald on numerous occasions either by personal visit or on the telephone. In a later conversation with Mr. McDonald, plaintiff stated that she had resigned her employment at Mount Alto Hospital because she wanted to get her annual leave lump sum payment, that she needed the money and was told by the Veterans Administration that if she wanted to get her leave payment, she would have to be terminated from the service.
(g) On October 17, 1963, plaintiff addressed to the Board of Appeals and Review of the Civil Service Commission a letter which read:
May I respectfully request an appointment for an appeal on an adverse decision by the Veterans Administration, Mt. Alto Hospital, Washington, D.C.
The decision to sustain the charges of A.W.O.L. and Insubordination after three separate hearings within the agency did not inform me of the right to appeal these charges to the Civil Service Commission Appeal Board. Through subsequent research in the Federal Personnel Manual, Inst. 50 November 17, 1961 quote: “When the decision is made to take adverse action, the notification shall inform the employee of:
(i) the adverse action to be taken and the reasons therefor;
(ii) the effective date of the action; and
*562 (hi) the employees right of appeal to the appropriate office or the Commission and the time limit within which his appeal must be submitted to the Commission.”
I wish at this time to ask permission to present for your approval the charges maintained against me, the validity of these charges, and the authority of an agency to use detrimental information to bar my future employment in either the Federal government or private industry.
May I also request that my attorney, Mr. Ellsworth T. Simpson, present this case for your approval as he conducted the three hearings within Mt. Alto Hospital and has the complete and correct data available.
It is most urgent and indeed respectfully requested that I be given this opportunity for an appeal.
(h) On October 22,1963, the foregoing letter was received by the Board of Appeals and Eeview of the Civil Service Commission.
(i) On November 4, 1963, plaintiff took a stenographer and typist Civil Service examination and was rated ineligible.
(j) On November 12,1963, plaintiff submitted to the Civil Service Commission a completed Standard Form 57, Application for Federal Employment, in which she stated that the reason for her leaving Mount Alto Hospital was “Forced Designation.”
(k) On December 13,1963, the Chief of the Appeals Examining Office of the Civil Service Commission addressed to plaintiff a letter which read:
Your appeal of October 17,1963 protesting “an adverse decision by the Veterans Administration, Mt. Alto Hospital, Washington, D.C.” is denied.
A review of your Official Personnel Folder disclosed that a notice proposing your removal from the position of Clerk-Typist, GS-322-3, Veterans Administration, Mt. Alto Hospital, Washington, D.C., was issued to you by letter dated July 10, 1961. A hearing was held and on October 12, 1961 Dr. T. J. Eeady, Hospital Director, issued his decision that the charges were substantiated but in light of your many years of service you should be *563 given another opportunity “in another position of comparable grade ana salary.”
Dr. Eeady’s decision letter directed you to report to Mr. Gordon T. Weightman, Chief Eegistrar, of the hospital as soon as possible to discuss your reassignment prospects.
The record shows that during a telephone conversation with Donald G. Kinsinger, Personnel Officer, on October 23, 1961 at 8:15 a.m., he asked you if you had received Dr. Eeady’s letter and whether you were coming back to work. You reportedly answered “I am not coming back to Mount Alto to work. I don’t want to see anyone there.” Whereupon Mr. Kinsinger asked you if you were resigning and you answered “I am resigning now with prejudice.”
At this point Mr. Kinsinger reportedly told you he was accepting your resignation as of that date, October 23, 1961, based upon your statement above. To this you reportedly replied he should be sure to indicate the reason “Eesigned with prejudice toward Mrs. Mauney.”
The above conversation was heard by Mr. W. G. Charl-ton and Mr. Daniel Meyers on extension phones and each corroborated the fact of your resignation.
Mr. Kinsinger wrote to you on the same date, October 23, 1961 notifying you your resignation “Eesigned with prejudice toward Mrs. Mauney” had been accepted and would be effected October 23, 1961. Mr. Kinsinger also sent you a SF-52 “Eequest for Personnel Action” for completion 'by you.
You also called Dr. Eeady on October 23, 1961 but as he was busy you spoke to Mr. F. Fort 'and told him, among other things you had resigned with prejudice which would be explained when you returned your SF-52 which Mr. Kinsinger was sending to you. You added you had been forced to resign.
Your resignation was processed effective October 23, 1961.
On October 26,1961 you called the Personnel Office and spoke with Mr. Kinsmger. You said you would not sign the SF-52 mailed to you on October 23, 1961. Mr. Kin-singer said that was up to you 'as your resignation had been processed as submitted by telephone on October 23, 1961.
*564 It appears that you are now appealing the termination of your services by the acceptance of your oral resignation.
We find no appealable adverse action. In summary your removal was proposed but in lieu thereof it was decided you should be reassigned and you were directed to report to the agency for reassignment. You did not present yourself for reassignment but instead called the Personnel Officer telephonically and stated a desire to resign and the reason therefor. Your resignation was accepted and processed in accordance with its terms.
Neither the law nor the Commission’s regulations provides a right of appeal to employees whose services were terminated by their voluntarily submitted resignations.
We would point out that had your separation been accomplished involuntarily the Commission would have denied your appeal for laches in not filing an appeal at a more timely date.
This decision becomes a final decision of the Civil Service Commission unless either the appellant or the employing agency files an appeal with the Board of Appeals and Eeview, U.S. Civil Service Commission, Washington 25, D.C., within seven (7) days of receipt of this decision.
(l) At the trial, Mr. Sedmack, an appeals examiner (finding 14 (e), supra), testified that the foregoing letter used the words “appeal” and “adverse decision” only because of the use of these words in plaintiff’s letter of October 17, 1963, but that there was no appealable action because the file revealed that there was a voluntary resignation, and hence that there was no adverse action taken.
(m) On December 18, 1963, plaintiff addressed to the Board of Appeals and Eeview of the Civil Service Commission a letter which read:
In receipt of a letter dated December 13,1963 signed by Mr. S. L. Elliott, Chief, Appeals Examining Office denying an appeal before this board, I respectfully request a hearing on my termed resignation from Mt. Alto Veterans Hospital, October 23, 1961.
I also respectfully request to have my attorney, Mr. Ellsworth T. Simpson — 9600 Glencrest Lane, Kensing-ton, Maryland — Phone 949-7878 represent me in this hearing.
*565 May this letter be entered within the time limitation of seven (7) days from the date of December 13,1963 as a request for a hearing before the Board of Appeals and Review, U.S. Civil Service Commission.
(n) On December 30,1963, plaintiff received a temporary appointment as clerk-typist, grade GS-2, in the office of the Manager, Administrative Services, Office Services Division, Index Section, Records and Correspondence Unit of the Veterans Administration. This appointment was not to exceed 700 hours. The employment was terminated effective March 29,1964.
15. (a) On January 16, 1964, E. T. Groark, Chairman, Board of Appeals and Review of the Civil Service Commission, addressed to plaintiff’s counsel a letter which read:
This refers to the request of Miss M. Rachel Gernand that she be afforded a hearing concerning the circumstances of the termination by resignation of her employment as Clerk-Typist at the Mt. Alto Hospital.
A review of Miss Gemand’s official personnel folder discloses that by letter of July 10,1961, a notice of proposed removal was issued to Miss Gernand. She was accorded a hearing on her case which led to an agency decision to reassign her rather than remove her from the service. The record further shows that during a telephone conversation between Miss Gernand and the Personnel Officer on October 23, 1961, he asked her if she was coming back to work. She replied: “I am not coming back to Mount Alto to work. I don’t want to see anyone there.” She was then asked if she was resigning and she replied “I am resigning now with prejudice.” The Personnel Officer then told Miss Gernand that he was accepting her resignation as of that date and she cautioned him to be sure to indicate the reason as “Resigned with prejudice toward Mrs. Mauney.”
Under the circumstances, there is no affirmative action which may be taken on Miss Gernand’s appeal. Accordingly, the decision of the Appeals Examining Office is affirmed and the matter is considered closed in this office.
(b) On May 11, 1964, plaintiff was again appointed to a temporary position designated as “Special Government Employee” in the Department of Medicine and Surgery, Deputy Chief Medical Director, Area Medical Office, Veterans *566 Administration. The title of this position was clerk-typist, grade 2/10. This appointment expired on June 80, 1964.
16. (a) Pertinent provisions of the Federal Personnel Manual (Part 9 — Separation, Suspension, and Demotion, effective February 10,1961) provided:
* ‡ $
Seo. 9.103 Definitions. For the purpose of this Part, the term:
(a) “Adverse action” means separation, suspension, or demotion.
* * * * *
SUBPART B — AGENCY ACTION
Sec. 9.201 General requirements, (a) Adverse action may not be taken against an employee except for such cause as will promote the efficiency of the service.
(b) Adverse action may not be taken against an employee for political reasons, except as required by law.
(c) Adverse action may not be based on discrimination because of marital status, physical handicap, or race, color, religion, or national origin.
ijs ^ % #
Seo. 9.202 Procedure for taking adverse action, (a) Effecting the action. The following procedures shall be observed when an agency proposes to take adverse action against an employee who is not serving a probationary or trial period or to terminate a probationary or trial period employee under the circumstances described in Section 2.301(c) (2) of this chapter.
$ ‡ ‡ ‡ $
(1) Notice of proposed adverse action. The agency shall notify the employee in writing of the proposed adverse action and the reasons therefor. This notice shall set forth, specifically and in detail, the reasons for the proposed adverse action.
* * $ * ❖
(2) Employee's answer. The employee shall be allowed a reasonable time for filing a written answer to the notice of proposed adverse action and for furnishing affidavits in support of his answer. The employing agency may, in its discretion, grant the employee a hearing. If the employee answers the notice, his answer shall be con *567 sidered by the agency in reaching its decision on the proposed adverse action.
(3) Notice of decision. The employee shall be furnished at the earliest practicable date with written notification of the agency’s decision on the proposed adverse action. When the decision is made to take adverse action, the notification shall inform the employee of:
(i) the adverse action to be taken and the reasons therefor;
(ii) the effective date of the action; and
(iii) the employee’s right of appeal to the appropriate office of the Commission and the time limit within which his appeal must be submitted to the Commission, as provided m Sub-part C of this Part.
$ ‡ ‡
SUBPAET C — APPEALS TO THE COMMISSION
Sec. 9.301 Right to appeal, (a) On 'procedures. An employee entitled to the benefits of this Part may appeal in writing to the Commission on the grounds that the procedures required by Section 9.202 have not been followed.
% ‡ ‡ # Sji
Seo. 9.302 Time limits. An appeal may be submitted at any time after the notice of adverse decision but not later than ten (10) days after the effective date of the adverse action. However, in the case of a postmaster appointed by the President and confirmed by the United States Senate who is notified that a final decision has been made to separate him but that he is to be continued in office until a successor is installed, the time limit on an appeal shall be ten (10) days after he receives notification of such decision. These time limits may be extended, in the discretion of the Commission, upon a showing by the employee that he was not notified of the applicable time limit and was not otherwise aware of the limit or that other circumstances beyond his control prevented him from filing an appeal within the prescribed time limit.
$ ‡ ‡ ‡ ‡
(b) At the trial, Mr. Sedmack, an appeals examiner (finding 14(e), supra), testified that within the meaning of the foregoing regulations, an adverse action is a fact, and that for an adverse action to be taken properly it has to be in writing, *568 but that if there is an adverse action, whether taken or improperly, the Civil Service Commission has jurisdiction.
CONCLUSION OE LAW
Upon the foregoing findings of fact, the court concludes as a matter of law that plaintiff’s 'appeal to the Civil Service Commission was timely, and that she exhausted her administrative remedy. The case is remanded to the Trial Commissioner for a new trial in accordance with this opinion.

We are Indebted to Trial Commissioner Richard Arens for his findings of fact, which we have adopted with minor revisions.

 Muriel R. Gernand v. United States, 174 Ct. Cl. 936 (1966).

 See Gernand v. United States, supra.

 See Estate of Mabel Lloyd Ridgely v. United States, 180 Ct. Cl. 1220, 1231, fn. 5 (1667).