**John C. McKECHNIE**

v.

**The UNITED STATES.**

**No. 499–79C.**

United States Court of Claims.

March 25, 1981.

---

Timothy C. Laubach, Orlando, Fla., for plaintiff; Gerald S. Livingston, Orlando, Fla., attorney of record; Livingston & Laubach, Orlando, Fla., of counsel.

Nancy R. Sills, Washington, D. C., with whom was Asst. Atty. Gen., Alice Daniel, Washington, D. C., for defendant.

Before COWEN, Senior Judge, and DAVIS, and NICHOLS, Judges.

## ON CROSS-MOTIONS FOR SUMMARY JUDGMENT

DAVIS, Judge:

The question in this personnel case is the timeliness of plaintiff's appeal to the Merit Systems Protection Board (MSPB) on May 15, 1979. The suit, which comes before us on cross-motions for summary judgment, stems from a notice of proposed separation for inefficiency that plaintiff John C. McKechnie received in August 1978. Mr. McKechnie had worked as a research electronic engineer with the Naval Training Equipment Center (NTEC), Department of the Navy, in Orlando, Florida, since the beginning of 1968. In the summer of 1978 he was a GS–13. On or about August 22, 1978, he received the notice of proposed separation for inefficiency. This informed him that his separation could be effected in thirty days, but that he had a right to reply within fifteen days, and that he had a right to counsel of his choice. He was also given the name of an employee in the Civilian Personnel Office who could answer questions.

The plaintiff sought as his representative a fellow employee, Margaret J. Mason, who replied to the notice and accompanied him to two meetings with Captain Westbrock, the Commander of NTEC. At the second meeting, plaintiff discussed the option of accepting a reduction in grade rather than

a discharge.[1] As a result, Mr. McKechnie requested such a reduction by memorandum on September 14, 1978, and the demotion to GS-7 became effective October 8, 1978. Plaintiff's explanation to the Merit Systems Protection Board and to us is that he accepted this reduction in grade after he had been informed, as he understood it, that he would be promoted quickly back to his old grade.[2]

The chronology then loses precision. Plaintiff's position is that, when nothing happened after five months, he attempted to find out when he would be reinstated to a GS-13 position. The record is unclear as to whether the plaintiff counted his five months from the date of his written request for a reduction on September 14 or from October 8, the date the change was effected. Depending on the starting date, five months brought him to either mid-February or early March, 1979. Mr. McKechnie says that he then met with Captain Westbrock who expressed surprise that McKechnie was still at NTEC, and the latter "thereafter" asked Ms. Mason to find out what Captain Westbrock had meant when, during his earlier September 1978 discussion with McKechnie, supra, he referred to McKechnie's future at NTEC. The plaintiff says that, after a three week delay, Ms. Mason met with the Captain and reported that he had meant that McKechnie could "work [his] way up." This three week period ends by the close of March 1979 (again depending on the starting date). At some point the plaintiff found in his personnel file that the Request for Personnel Action form in his file had been marked "no promotion potential." This discovery apparently occurred after the original five months wait had passed.[3] The notation disturbed plaintiff very much. At the latest, it seems clear to us, it was the middle or end of March when the plaintiff had good reason to believe that Captain Westbrock had no intention of reinstating him quickly as a GS-13.

At this point, plaintiff sought and obtained legal counsel. His attorney met with Captain Westbrock on April 4, 1979, and told the Captain, according to a follow-up letter that the attorney sent to the Captain on April 9, 1979, that Mr. McKechnie believed his reduction in grade to have been involuntary. The letter of April 9, 1979 proposed a compromise in which either Mr. McKechnie would be promoted to a grade of GS-12 or the termination process would be reinstituted with a full hearing by the agency. Captain Westbrock rejected this proposal in writing on April 23, 1979.

The plaintiff then, in a letter dated May 15, 1979, appealed to the MSPB, claiming that his reduction in grade had been involuntary. The Board rejected the appeal as untimely. *John C. McKechnie v. Department of the Navy*, MSPB, Atlanta Field Office, Decision No. AT752B90246 (Aug. 3, 1979). The only issue properly before us is whether that ruling should be sustained or upset.

█ Under the regulations then prevailing, the time for an appeal of an adverse action such as a suspension or demotion is fifteen days from the effective date of the adverse action. The appeal must be in writing. 5 C.F.R. §§ 752.203, 772.302(a) (1978). If the agency, as here, fails to give the employee notice of his right to an appeal,[4] the Board may extend the time if the

---

1. It remains a matter of dispute at whose suggestion this alternative arose.

2. At one point in the administrative proceedings, plaintiff described this as follows: "I had the impression that he [the Commander] was fitting me into a new group, and I felt confident that as a GS-13, Level 7 capability, I would soon justify reinstatement at my old grade."

3. At oral argument, Mr. McKechnie's attorney was uncertain of when his client found this notation in his file. At different points in the argument he said that it was before the first post-five months meeting with Captain Westbrock (which would be February or early March), sometime in March after he had access to his file, the end of March, beginning of April, or two months before the May 15 appeal. It was apparent that he did not know precisely and the record is no more revealing.

4. Obviously, NTEC considered plaintiff's reduction voluntary and therefore not an appealable "adverse action"; accordingly, it gave him no

appellant exercises "due diligence in discovering and pursuing the administrative appeal available." 5 C.F.R. § 772.302(b) (1978).[5]

■ On this issue of due diligence we cannot disagree with the Board. We assume (without deciding) that (a) so long as plaintiff felt and had reason to believe that he would be promoted quickly back to GS–13 he had no adequate reason to consider his demotion involuntary, and (b) during that period he had no ground for appealing to the Merit Systems Protection Board.[6] But even on those assumptions he clearly had an obligation of due diligence once he obtained good reason to believe that his prior view was unfounded or very questionable. That occurred here at the latest, as we have said, in the middle or end of March 1979. By that time, over five months had elapsed since his reduction in October 1978. He had not received a promotion nor had he, by his own statements, received any satisfaction from Captain Westbrock, the Commander of NTEC. More than that, he had discovered the notation in his file which said "no promotion potential."[7]

Plaintiff was sufficiently upset to retain an attorney (by the beginning of April). This attorney met with the Commander on April 4, 1979 and (according to the attorney's follow-up letter of April 9th) told him that by then claimant believed his demotion to have been involuntary. This was made indisputably clear by counsel's letter of April 9th:

* * * it is our position that Mr. McKechnie did not "voluntarily" request a reduction in grade but, in fact, Mr. McKechnie was subjected to extreme duress and pressure under threat of being terminated * * *.

Nevertheless an appeal to the Merit Systems Protection Board was not made until May 15, 1979. The intervening period of more than a month was taken up with further unsuccessful efforts to compromise the matter with the employing agency. The agency did not encourage claimant or his lawyer to continue these settlement negotiations.

This delay of more than twice the time allowed for an appeal to the Board from a known adverse personnel action (15 days) was not diligent in the circumstances. As plaintiff well knew, more than seven months had gone by since his demotion; he clearly considered by the beginning of April 1979 that this reduction had been involuntary; he had previously received no promotion and no assurances of quick promotion; and he had hired a lawyer who knew or should have known that 15 days was the normal time for an appeal to the Board. In

notice of a right of appeal. (Voluntary actions are not appealable, *see Dabney v. Freeman*, 358 F.2d 533, 535 (D.C.Cir.1965); *Paroczay v. Hodges*, 219 F.Supp. 89, 90 (D.D.C.1963)). Nevertheless if the reduction was in fact involuntary it became an appealable "adverse action." *See, e. g., Perlman v. United States*, 203 Ct.Cl. 397, 406, 490 F.2d 928, 932–33 (1974); *Gratehouse v. United States*, 206 Ct.Cl. 288, 299, 512 F.2d 1104, 1110 (1975), *cert. denied*, 434 U.S. 955, 98 S.Ct. 480, 54 L.Ed.2d 313 (1977). The Board, on timely appeal, will consider whether the reduction was in fact voluntary.

5. This is the standard applied by the Merit Systems Protection Board and accepted by the parties.

6. These postulates include the doubtful assumption that a professional employee could rest on his subjective "impression" that he would be soon reinstated to his GS–13 position, without his making any further inquiry into the solidity of that impression. As the Board said in its opinion, "[t]he impressions appellant received from, and the interpretations he placed on, the Commanding Officer's comments are matters which were solely within his, and not the agency's control." Even plaintiff has not claimed that Captain Westbrock said anything more than that plaintiff could work his way back up and that the Commander would monitor his progress. That comment could certainly bear other constructions than the one claimant says he received.

7. Defendant interprets this as merely an indication that plaintiff's promotion to a higher grade would have to be through competitive (merit promotion) and not career (non-competitive) promotion. (In fact, plaintiff was given a competitive promotion on June 3, 1979). Mr. McKechnie, however, could and apparently did consider the bare notation as barring him from all promotion.

this situation, diligence would call for a prompt appeal by the middle of April 1979 at the latest—not the middle of May (when plaintiff actually appealed to the Board). Even if Mr. McKechnie and his attorney wished to pursue their efforts to compromise with the agency, they could plainly have saved claimant's appeal rights by meanwhile filing an appeal to the Board. The Board can properly read its regulation as foreclosing an employee from delaying an appeal (which he knows or should know ought to be taken) simply because the employee wants one more chance to settle with or persuade the agency. A federal employee does not exercise diligence in unduly and unnecessarily prolonging the fixed time limits. The regulations "are plain about the need for proceeding promptly and the penalty for undue delay." *Wilmot v. United States*, 205 Ct.Cl. 666, 680 (1974).

■ There are no other grounds on which we can find that plaintiff made a timely appeal. The attorney's letter of April 9, 1979 to the Commander did not constitute an appeal to the Board; the letter does not mention the Board or say that plaintiff desired an appeal to the Board but states, rather, that Mr. McKechnie's demotion was involuntary and suggests some compromise solutions for the agency itself to adopt.[8] *Gernand v. United States*, 188 Ct.Cl. 544, 412 F.2d 1190 (1969), was quite different. There, the low-level employee, unaided by counsel, herself wrote the President about her case within five days after realizing the totality of her predicament, and the President then referred her letter to the Civil Service Commission for consideration of matters within its jurisdiction; the Commission received and acknowledged her letter. In those specific circumstances, quite unlike the present ones, the letter was considered by this court as a timely appeal to the Commission. In *McCormack v. United States*, 204 Ct.Ct. 371 (1974), the employee (likewise acting by himself and without counsel) was uninformed and unaware of the appeal time limits and himself wrote shortly to the agency indicating the involuntariness of his action; we held that in that situation he had taken reasonable and prompt steps to appeal after deciding in his own mind that his resignation was involuntary. Neither *Gernand* nor *McCormack* holds that in quite different circumstances—such as those we now have—an appeal to the Board (or the former Commission) can or should be taken by a letter to the agency which does not refer to an appeal or to the Board.[9]

■ The plaintiff also argues that he delayed because he was intimidated into fearing that he would be ousted if he appealed. This charge is not substantiated in the record. The MSPB rejected the plaintiff's contention before it that he "was intimidated [when he signed the letter agreeing to his reduction] so as not to carry the matter any further, but to work hard and diligently without making any noise," noting that "[n]o evidence, direct or circumstantial, was offered in support of this bare allegation and accordingly, no consideration will be given thereto." *McKechnie v. Department of the Navy, supra.* This finding is adequately supported. Above all, there is nothing to show that plaintiff delayed after April 4th because of fear of the consequences of taking an appeal. We cannot therefore find that intimidation or justified fear excused Mr. McKechnie's delay. *E. g., Dabney, supra*, 358 F.2d at 535, 537; *Boyle v. United States*, 207 Ct.Cl. 27, 34, 515 F.2d 1397, 1401 (1975).

8. The letter ends by saying that, if the Commander does not respond, counsel "will have no alternative but to take such action as may be necessary to protect the interests of [his] client." This comment shows clearly that no appeal was intended by the letter itself but that counsel knew of the claimant's appeal rights.

9. Similarly, *Hagarty v. United States*, 196 Ct.Cl. 66, 74, 449 F.2d 352, 355–56, 365 (1971), a

military case, involved a low-level seaman without legal assistance. In addition, Hagarty was found to have been lulled by the Navy's action into a belief that an appeal was unnecessary or counter-productive. This rationale clearly cannot apply to the period after McKechnie himself considered that his demotion was involuntary and retained a lawyer.

Plaintiff's failure to bring a timely appeal to the Merit Systems Protection Board bars a claim on the merits or on the issue of coercion. *E. g. McCormack, supra,* 204 Ct.Cl. at 374, *Pine v. United States,* 178 Ct.Cl. 146, 149, 371 F.2d 466, 467–68 (1967); *Martilla v. United States,* 118 Ct.Cl. 177, 179–80 (1950). The other side of the coin is that we cannot consider (in a de novo trial or otherwise) the claim that Mr. McKechnie's request for a reduction in grade was involuntary, or any other aspect of his reduction.[10]

Accordingly, plaintiff's motion for summary judgment is denied, defendant's motion is granted, and the petition is dismissed.

---

**10.** This includes plaintiff's contention that he was given by the agency less than the requisite time in which to respond to the proposed notice of separation. For the same reason, plaintiff's motion for production of documents—which goes to the issue of voluntariness—is moot and need not be considered, and is therefore denied.