Kashiwa, Judge,
delivered the opinion of the court:
The plaintiff, a Veterans Preference Eligible and an Air Traffic Control Specialist (hereinafter referred to as “ATCS”) with the Federal Aviation Administration (hereinafter referred to as “FAA”), brings this action for improper separation to recover judgment in the amount of $35,988, plus interest thereon and costs, or, alternatively, reinstatement with back pay, including pay increases with interest thereon and costs plus attorneys’ fees. Further, the plaintiff requests an order vacating his previous classification as a “Key” federal employee with an express recommendation for reinstatement to the rank and grade he previously held in the Minnesota Air National Guard.
The case is presently before the court on defendant’s motion for summary judgment or, in the alternative, for remand of the case to the Civil Service Commission and on plaintiff’s cross motion for summary judgment. For reasons hereinafter stated, we deny both parties’ motions for summary judgment and allow defendant’s alternative motion for remand to the Civil Service Commission.
The ultimate controversy in this case could involve the separation action, but to reach this the proper tribunal must first determine the issue of whether the plaintiff voluntarily resigned his position or, on the other hand, was coerced into “resigning.” If the latter position is ultimately viewed as correct, then the plaintiff’s removal is an adverse action carrying with it the various administrative safeguards, such as a hearing and appeal.[1]
The Government has interposed an affirmative defense, claiming that the plaintiff failed to exhaust his administra *374 tive remedies by failing to take a timely appeal to the Civil Service Commission. There is no doubt that unless the delay is excused the doctrine of exhaustion of administrative remedies bars a claim where the administrative appeal is untimely. Feld v. United States, 185 Ct. Cl. 754 (1968), cert. denied, 395 U.S. 903 (1969); Martilla v. United States, 118 Ct. Cl. 177 (1950).
The factual setting in which this case arises may be briefly summarized[2] as follows. Plaintiff, a Veterans Preference Eligible, was employed as an ATCS, GS-2152-9, by the FAA. This position is a developmental position which requires the employee to continue to pass upward training requirements and to advance to the next higher grade ATCS position. At a time when the plaintiff had some 19 years and 9 months tenure, on October 26,1970, the plaintiff met with Eichard C. Which, then Deputy Chief of the FAA Farm-ington, Minnesota, Air Eoute Traffic Control Center.
The incidents of this meeting make out, in the view of the plaintiff, a showing that his “resignation” was involuntary, it being the result of coercive pressure. According to the Government, the incidents merely demonstrate that the plaintiff was given the opportunity to resign, if he so chose, so as to avoid removal proceedings. The determination of this controversy must be left to another day. In any event, on October 28, 1970, plaintiff submitted his resignation form, effective November 13,1970.
There is a controversy revealed by the parties’ affidavits as to whether the plaintiff was informed of the appeal procedures which could be invoked after an adverse action. The plaintiff categorically denies that such procedures were mentioned while the Government maintains that plaintiff was orally informed that if he chose to go the route of a removal proceeding, as opposed to a resignation, an appeal would be his right. The Government does not contend, however, that it informed the plaintiff that if his resignation was involuntary as being made under coercion, then an appeal would be his *375 right. In any event, the Government, in its final brief, contends that it is entitled to summary judgment even assuming, arguendo, that the plaintiff was not advised of his hearing and appeal rights.
Within 17 calendar days, that is, on November 30, 1970, the plaintiff wrote Don L. Latimer of the FAA in Farming-ton, Minnesota. Portions of that letter follow:
After much consideration 'and deliberation the information and circumstances that I will set forth in this letter should be brought to the attention of the FAA officials, because of the prejudicial and unfair manner in which my separation from Federal Civil Service was initiated.
Ht & # # *
On October 26,1970 * * * Mr. Diehard Walsh advised me that because of my training progress it was his duty to request that I resign or separation action would be initiated. I was told to resign because should I prefer to seek Federal employment again, the resignation would not be a determintal [sic] fact [for prospective employment with] the new Federal agency, but a separation would be. I had almost 20 years in Federal Civil Service and I had no desire to jeopardize my status within the Federal Civil Service, so I signed a form resigning effective November 13,1970. * * *
^ Hi # H?
I raised the question of severance pay to Mr. Walsh, but was told I would not receive severance pay. Unless there is more information about severance pay other than in the FAA regulation 3550.5 page 2 paragraph 6a,[3] further clarification is necessary because I reel I am entitled to severance pay based on the above regulation. At no time was I counseled about my rights as a civil service employee, job vacancies within the FAA, job vacancies elsewhere within Federal Civil Service, retirement etc. I was only counseled on how to sign my “resignation” papers.
# Hí ❖ ❖ íH
After October 13, 1970 * * * training reports that showed progress were found in the waste basket and *376 were not entered into my training folder. I am convinced that adverse 'prejudicial age factor, and not progress, was the reason for my being withdrawn from ATC training.
On December 18, 1970, Mr. Latimer responded. This response basically stated that the plaintiff voluntarily resigned. Thus, no avenues of administrative relief (other than communicating with Latimer himself) were suggested.
Various letters to elected representatives, etc., followed; and on March 07, 1971, plaintiff wrote the Department of Transportation, FAA, Central Legion, in Kansas City, Missouri, as follows:
Under the provisions of Federal Personnel Manual Supplement 990-2 and FAA Order 3550.51 request severance pay for my Federal Civil Service from February 20,1951 to November 13,1970. My resignation was by agency request but not “for cause” as listed and explained in the above orders. If my involwitary resignation would have been “for cause” the Assistant Center Chief would not have made the recommendation that I be considered for re-employment by the Federal Civil Service system on my exit interview. [Emphasis supplied.]
Plaintiff’s formal appeal to the Civil Service Commission occurred on October 4, 1971, not quite 11 months after the effective date, of his resignation.
The Chicago Legion of the Civil Service Commission, on November 12,1971, ruled that
The mere fact that he may not have been informed of any right to appeal, or the time limitations to be followed in filing an appeal, does not relieve Mr. McCormack of the obligation and responsibility to determine his appeal rights in this matter. A thorough examination of your letters, the affidavits, and the other exhibits submitted by or in behalf of Mr. McCormack, while revealing that he had made certain efforts to obtain information concerning his employment with the FAA subsequent to his resignation, basically discloses that his efforts were directed to other matters such as severance pay, reinstatement, and restoration of his former military status in the Air National Guard. There is no evidence that he advanced a contention that his separation was other than voluntary until doing so through your letter of Au *377 gust 20, 1971, to the manager of the Commission’s Minneapolis-St. Paul Area Office. V
Accordingly, while in certain instances it is within the Commission’s discreation [sic] to extend the time for filing an appeal, it is found that nothing has been introduced to show that Mr. McCormack was prevented by circumstances beyond his control from filing an earlier and more timely appeal, or that he had taken reasonable steps to determine his appeal rights in this matter. It is therefore found that Mr. McCormack has not demonstrated to the Commission’s satisfaction that he was prevented from filing a timely appeal and that the time limits for filing, as set forth in Part 752 of the Civil Service Eegulations, have not been met in this case.
This ruling was, in due course, appealed to the Board of Appeals and Eeview of the Civil Service Commission which, on April 19,1972, affirmed the Chicago Eegion:
* * * The record does not show what response, if any, Mr. McCormack received to his letter of November 30, 1970, but, since a resignation is effected in response to an employee’s request for such action, it is not to be expected that an agency would advise an employee who resigned, or who is about to resign, that he has a right of appeal from that action, and that there are time limits applicable thereto. If, however, an employee genuinely believed that his resignation was, in fact, a discharge, he would be expected to exercise due diligence in presenting an appeal to the Commission in a manner comparable to a person who was officially subjected to an appealable adverse action (removal).
* * * In our view, it is reasonable to believe that Mr. McCormack knew of the Civil Service Commission and that he might well have directed an inquiry, or appeal, to the Civil Service Commission earlier than he did in the instant case. Under the circumstances, the Board of Appeals and Eeview has concluded that the determination made by the Chicago Eegion, that Mr. McCormack has not shown that he was prevented by circumstances beyond his control from filing an earlier and more timely appeal, or that he had taken reasonable steps to determine his appeal rights, was a proper determination.
It is our view that the Civil Service Commission abused its discretion when it determined that the plaintiff had not taken *378 reasonable steps to determine his appeal rights. We begin our analysis with the relevant Federal Regulation, 5 C.F.R. § 752.204 (1971):
§ 752.204 Time limit for initial appeal.
a. Except as provided in paragraphs (b) and (c) of this section and § 752.205, an employee may submit an appeal at any time after receipt of the notice of adverse decision but not later than 15 days after the adverse action has been effected.
# . s¡c SS Sic Sic
c. The Commission or the agency, as appropriate, may extend the time limit on an appeal to it when the appellant shows that he was not notified of the time limit and was not otherwise aware of it, or that he was prevented by circumstances beyond his control from appealing within the time limit.
Obviously, the case of a party who claims that he was subject to an adverse action because of a coerced resignation presents, with respect to the issue of timeliness of appeal, a confused situation. If the plaintiff is not properly informed of appeal rights, his time for appeal may run. However, the Government cannot be expected in all cases to recognize that the plaintiff’s resignation is viewed by the plaintiff as coerced. Fortunately, the instant case does not present so stark a background. The plaintiff did take action sufficient to put the Government on notice that the plaintiff viewed the “resignation” as an adverse action. At this point, the Government, while it need not acquiesce in plaintiff’s view, must at least inform the plaintiff of the administrative rights attaching to an involuntary resignation. If the Government does not, after it knows, or should know, that the plaintiff is contending that his resignation was involuntary, come forward and explain that a true involuntary resignation gives rise to hearing rights, then the rule that the delay in appeal will be excused becomes applicable. See Ainsworth v. United States, 180 Ct. Cl. 166, 172 (1967); Shubinsky v. United States, 203 Ct. Cl. 199, 488 F. 2d 1003, 1006 (1978).
A mere 17 calendar days [4] after the effective date of the *379 resignation, the plaintiff wrote to Mr. Latimer of the FAA. The letter reveals that the plaintiff felt entitled to severance pay. Such a demand for severance pay necessarily carries with it the implication that the demanding party views his resignation as not a voluntary one. While the regulation involved, supra footnote 3, is less than crystal clear, one fact is apparent: severance pay cannot be paid to a person who resigned voluntarily. Plaintiff also related that “I was told to resign,” hardly the words of a person who had made his own decision. In addition, plaintiff’s letter contains the allegation that he was, in effect, coerced into resigning for fear that he would be very adversely affected in the competitive service if he did not resign. This factor was outlined as being of extreme importance to the plaintiff because, with approximately three months remaining to complete his necessary 20 years of federal service for retirement purposes, the plaintiff did not want to risk jeopardizing his chances for a new position.[5] This allegation is disputed by the Government. While we need not resolve this factual dispute, it should have been apparent to the Government that the plaintiff was setting forth his case that the resignation was induced by coercion and was not voluntary. Further, the plaintiff informed the FAA that “[a]t no time was I counseled about my rights as a [Cjivil {Service employee,” putting the agency on notice that the plaintiff was in the dark with respect to the legal route by which to *380 pursue Ms grievance. Finally, the plaintiff chose to put the word “resignation” in quotation marks, signifying that he deemed his departure to be other than by means of a traditional resignation.
We have said that the Government is not clairvoyant and may not be required to read the plaintiff’s mind. However, the Government cannot, after receiving a letter wherein the cast of plaintiff’s mind is made abundantly clear, do nothing to inform the plaintiff of the proper appeal procedures and then defend on the grounds of plaintiff’s failure to make a timely appeal. The Government may contest the question of the voluntariness of the resignation, hut it cannot, at this point, withhold from the plaintiff all the information normally given to a party who has been, by standard form, the subject of a removal action. We hold that the 'Civil Service Commission abused its discretion in holding that the plaintiff did not take sufficient steps to be excepted from the normal rule requiring a formal appeal within 15 days.[6] After the plaintiff ■made it sufficiently clear to the Government that he deemed his resignation to be other than voluntary, the Government was required to state in detail the various procedures available to the plaintiff to contest the allegedly adverse action and the remedies available. The Government cannot claim to be in the dark when plaintiff’s letters constitute sometMng less than a legal brief to the point. So long as the Government is on notice that plaintiff views himself the subject of an adverse action the Government can no longer claim surprise with respect to an allegation of involuntariness.
For the foregoing reasons, we hold that the Board of Appeals and Review of the Civil Service Commission abused its discretion in ruling that the plaintiff had not taken reasonable steps to determine his appeal rights and that he, thus, *381 was not prevented by means beyond his control from filing a more timely appeal. The Board’s ruling, being unsupported by the substantial evidence, cannot stand.'
However, we believe that the issue of whether, in fact, the resignation was other than voluntary should, in the first instance, be heard by the Civil Service Commission. The Civil Service Commission has broad discretion as well as invaluable experience and expertise to apply in resolving these controversies. For these reasons, defendant’s alternative motion for remand is well taken; and pursuant to the newly enacted remand statute (see 28 U.S.C. § 1491, as amended by Pub. L. 92-415 (August 29, 1972), 86 Stat. 662), we remand the ease to the Civil Service Commission for a hearing on the question of whether the resignation was involuntary within the meaning established by e.g., Perlman v. United States, Ct. Cl. No. 178-72 (slip op. decided January 23, 1974, rehearing denied and opinion amended by order dated April 5, 1974), and on all other appropriate questions with respect to plaintiff’s claim.
CONCLUSION
Upon the foregoing opinion, the defendant’s and plaintiff’s motions for summary judgment are denied and defendant’s alternative motion for remand is granted. Pursuant to Pub. L. 92-415, 28 U.S.C. § 1491, and General Order No. 3 of 1972, the case is remanded to the Civil Service Commission. Plaintiff’s counsel is designated to advise the court, by letter to the clerk, of the status of the remand proceedings as provided for in paragraph 9(a) of the General Order, with said advice to be given at intervals of 90 days or less, commencing from the date of this opinion.

 See McGucken v. United States, 187 Ct. Cl. 284, 287-288, 407 F. 2d 1349, 1350, cert. denied, 396 U.S. 894 (1969), where this court held that if the resignation Is viewed as Involuntary, then the plaintiff must be afforded a hearing on such “discharge” under the Veterans’ Preference Act, 5 U.S.C. § 863 (1964).

 Since we have chosen to limit our inquiry to the issue of the excusability of plaintiff’s untimely appeal to the Civil Service Commission, it is not necessary to recite, in detail, the various allegations with respect to the issue of the alleged coerced retirement except insofar as these allegations relate to the issues of timeliness.

 FAA ORDER 3550.5 Severance Payments (January 19, 1967) :
6. CONDITIONS OF ELIGIBILITY.
a. Conditions Affecting Eligibility. Severance pay Is authorized for an eligible employee who Is Involuntarily separated from the Agency, but not for removal for cause on charges of misconduct, delinquency or Inefficiency. An employee Is considered to be Involuntarily separated when his separation from the Agency is due to a reduction In force, or to the transfer of a function to another commuting area. * * »

 We take judicial notice of the fact that the fifteenth day after the effective date of the retirement was November 28, 1970, a Saturday. In similar circumstances, we have held that when the fifteenth day falls on a Saturday, the plaintiff has until the following working day to file his appeal. See Pettit v. *379 United States, 203 Ct. Cl. 207, 216-18, 488 F. 2d 1026, 1031 (1973). In the case before us, sueb “following working day” was November 30, 1970, the date of plaintiff’s letter to the FAA.
While plaintiff’s letter was not directed to the Civil Service Commission, we observe that this case is not unlike Gernand v. United States, 188 Ct. Cl. 544, 412 F. 2d 1190 (1969), where this court held that a letter to President Kennedy was sufficient to constitute a timely appeal. In Gernand, the court held that the referral by the President to the Civil Service Commission of the letter constituted notice of said appeal. In the instant case, there was no such referral of the subject letter to the Civil Service Commission. However, for reasons hereinafter stated, the letter constituted, at a minimum, notice to the FAA that the plaintiff viewed his resignation as involuntary.

 In this regard, it will be observed that the Federal Personnel Manual, Supplement, 752-1, subchapter Sl-2(b) (1) provides :
“b. Involuntary actions. (1) Employee deceived. Agencies should be particularly cautious about assuring an employee that a voluntary separation, as opposed to a removal for cause, will leave his record unblemished. * * * Thus, if an employee is influenced to separate voluntarily because of his agency’s assurance that this action will leave him with a clear record in his Official Personnel Folder and if the agency then enters any unfavorable information on the SF 50, the agency has deceived the employee.”

 The Civil Service Commission stated that the plaintiff did not argue that his resignation was other than voluntary until August 30, 1971. However, some five months before, on March 27, 1971, plaintiff clearly designated his resignation as “involuntary.” While this letter was written in the context of the claim for severance pay, it was, nonetheless, part of the record before the Civil Service Commission; and we see no reason why this does not qualify as bringing plaintiff’s coercion grievance to the attention of the proper parties. In light of our holding with regard to the letter of November 30, 1970, we do not decide whether this letter, coming some four months after the resignation, would, if no action were taken at an earlier date, be sufficient to excuse plaintiff from the 15-day rule.