**George P. EDGERTON, Petitioner,**

v.

**MERIT SYSTEMS PROTECTION BOARD, Respondent.**

**Appeal No. 85–1966.**

United States Court of Appeals, Federal Circuit.

July 15, 1985.

George P. Edgerton, pro se.

Paul Streb, Merit Systems Protection Board, Washington, D.C., for respondent.

Before NEWMAN, Circuit Judge, NICHOLS, Senior Circuit Judge, and BISSELL, Circuit Judge.

NICHOLS, Senior Circuit Judge.

■ This is an appeal taken *pro se* from the decision of the Merit Systems Protection Board (board or MSPB), docket No. SE07528410177, which dismissed the appeal before it as untimely filed. Edgerton had sought relief against a resignation from the federal civil service, alleged by him to have been coerced, an allegation denied by the agency. He excused his undoubted lateness on the ground that the agency had never properly informed him of his appeal rights; but the board held by its presiding official that he was not sufficiently diligent after learning from third parties where and how to appeal. We hold, however, that the agency knew Edgerton's object was to obtain, not reinstatement and back pay, but early retirement, and under those circumstances advice to appeal to the MSPB would have been misleading and incorrect. We therefore affirm, but without prejudice to whatever right Edgerton enjoys to apply to the Office of Personnel Management (OPM) for an early retirement annuity under 5 U.S.C. § 8336(d)(1) as one who was separated involuntarily, as he claims, and who satisfies length of service and age requirements, if he does.

## Facts

Edgerton was born April 17, 1925, and thus was 56 years old on the effective date of the allegedly coerced resignation, March 22, 1982. On that date he had been in United States Government service from February 27, 1960, over 22 years counting military service. These dates are not fact findings by the court, though based on a notification of personnel action which is in the record and whose authenticity is not denied. They are referred to as explaining Edgerton's belief that he was entitled to early retirement, with obvious reference to the age and length of service dates the above statute requires. Edgerton was employed by the Department of Housing and Urban Development (HUD) as a Field Mortgagee Representative (GS–13), with duty station at Seattle, Washington. We do not undertake to pass on the sufficiency of the alleged coercion by which supposedly, the resignation was obtained. Apparently the circumstances revolved around an injury Edgerton suffered, and his inability to obtain the sick leave he believed to be his right. There was a letter of reprimand and charges that he was drunk on duty. The agency denied there was any coercion whatever, but finding the truth is not our function as an appellate court.

According to the MSPB findings, as early as April 5, 1982, Edgerton advised the agency by mailgram that he wanted "to rescind his resignation and instead be processed for early retirement." As we will show in discussing the law, this was implicit advice that he considered the resignation coerced, since by the statutory text unless it was involuntary, early retirement was not available. If the agency needed an explicit statement as to the alleged coercion, it was given August 11, 1983. By the findings:

> An attorney representing appellant wrote to respondent outlining appellant's continued desire for a retirement annuity and specifically stating he had been forced to resign.

It is evident, therefore, that early retirement was present in his mind as the preferred resolution of his problem. For one who thinks he has yielded to coercion by resigning, and who satisfies the age and length of service requirement, it is obvious that early retirement will often be the preferred alternative. It will avoid having to exercise one's rights by reinstatement, returning to the work environment from which one departed by the emphatic wish of those in charge. To do this would require more intestinal fortitude than many of us possess, even when the law will back us up. For the agency, early retirement will avoid a potentially disruptive situation in the work place following a reinstatement.

The agency never notified Edgerton what he had to do to apply for early retirement, which was, as we shall show, to petition OPM as the agency must have well known. Its position was that it did not

coerce, and inferentially, that it was not going to help Edgerton find a medium to establish the contrary. However, as we shall show, it was not for the agency to determine finally whether Edgerton was entitled to early retirement or not.

Unfortunately, Edgerton followed the practice of so many in taking up his problem with Senators and Congressmen (really their staff aides) who knew no more than Edgerton about the intricacies of Civil Service law and procedure, and were less in a position to find out. Not until March 1, 1984, according to the findings, did Edgerton "learn" from a Congressman that he should petition the MSPB. This advice would have been good only if early retirement had not been his principal object. On the other hand, since the agency knew very well that Edgerton's object was early retirement, we do not see how it can be faulted for not giving Edgerton this useless, for him, advice to petition the MSPB. It can be faulted for giving this misleading advice to a Congressman who inquired on his behalf. The Congressman (or his staff) should have known early retirement remained the objective, for Edgerton so stated to him by letter of December 14, 1983. Apparently the MSPB itself stated the early retirement issue was outside its jurisdiction.

On May 31, 1984, Edgerton did finally appeal to the MSPB. The presiding official faults the agency for never informing him of his right to appeal there, but treated the error as harmless in view of what Edgerton learned on March 1. The loss of time in petitioning is viewed as only from March 1, but three months are viewed as too excessive for discretion to waive the late filing to be exercised in Edgerton's behalf.

### Discussion

The statute Edgerton had in mind when he requested early retirement is 5 U.S.C. § 8336(d)(1) as follows:

(d) An employee who

(1) is separated from the service involuntarily, except by removal for cause on charges of misconduct or delinquency; or

(2) [not relevant]

after completing 25 years of service or after becoming 50 years of age and completing 20 years of service is entitled to an annuity.

These age and length of service requirements are less exacting than those generally applicable, so one removed involuntarily, but not for misconduct or delinquency, will qualify with an age and length of service where most employees would not. There are other special cases not here relevant such as law enforcement officers, firefighters, air traffic controllers, etc.

The OPM has prescribed regulations that govern applications for Civil Service retirement under that part of the United States Code. By 5 C.F.R. § 831.101 it "has charge of the adjudication of all claims * * *." By § 831.104 application shall be on forms prescribed by it. An application may by § 831.501(a) be filed with the agency or by one who has become eligible, with OPM. By § 831.501(b) it may be filed in the cases of "voluntary or involuntary separation" only after separation or not over 30 days before the commencing date of his annuity. There is a deadline for disability retirements only, as they must be sought within 1 year after separation, but no such deadline is stated for other kinds of retirements. By § 831.504(a), one eligible for retirement based on involuntary separation is not entitled to an annuity under 5 U.S.C. § 8336(d)(1) if he has declined a reasonable offer of another position; what is reasonable being then defined in subsection (b).

The MSPB does not by statute or regulation have primary jurisdiction of claims for annuities under 5 U.S.C. § 8336(d)(1), so far as we are aware, but it does, of course, have appellate jurisdiction of OPM decisions respecting retirement annuities under 5 U.S.C. § 8347(d) and 5 C.F.R. § 1201.-3(a)(6). *See also* 5 C.F.R. § 831.110.

■ An involuntary separation is ordinarily an adverse action or an ostensibly voluntary separation that was actually the same as an adverse action because coerced.

*Perlman v. United States,* 490 F.2d 928, 203 Ct.Cl. 397 (1974). It would appear that the guidelines are about the same if the question is whether a separation was voluntary or involuntary, either under § 8336(d)(1) or under the adverse action rules. In either case the test of an involuntary resignation is that the employee involuntary accepted the terms of the agency, that circumstances permitted no other alternative, and that said circumstances were the result of coercive acts of the agency. *Cf. Taylor v. United States,* 591 F.2d 688, 219 Ct.Cl. 86 (1979). Some other instances without coercive acts are held in *Scharf v. Department of the Air Force,* 710 F.2d 1572, 1574 (Fed.Cir.1983) to make a retirement involuntary.

■ In view of the foregoing, it appears that an employee who has filed an ostensibly voluntary resignation but who wishes to show it was involuntary, may elect either to pursue reinstatement and back pay via the MSPB or an early retirement under § 8336(d)(1). If the latter is chosen, a direct appeal from the agency to the MSPB is inappropriate as he must first apply to the OPM. If an employee, like Edgerton here, pursued relief by appeal to the MSPB under 5 U.S.C. § 7701, when he really wanted early retirement, he might, if successful, get relief he did not want but be unable to achieve what he did want. Suppose the MSPB found in his favor, he would be offered his old job back and his entitlement to immediate annuity would go glimmering. The agency, with the cooperation of the OPM, might prefer to let him have the immediate annuity after reinstatement, as a lesser evil, but this is something he could not count on.

Under the circumstances the agency cannot be faulted for not telling the employee to appeal to the MSPB, but it can be for not telling him how to go about applying for an immediate annuity. That failure does not relate to any issue before us for adjudication, however. We note here that the regulation, 5 C.F.R. § 1201.21, *"Notice of Appeal Rights,"* does not speak to a case of alleged forced resignation. The notice of

time to appeal to the board and of the board's address, etc., is only triggered by the issuance of "a decision notice to an employee on a matter appealable to the Board * * *." There is no "decision notice" for this advice to accompany, in case of an ostensibly voluntary resignation. We are of the opinion, however, that the obligation to notify of appeal rights owes its existence to the need to counterweigh the extremely short appeal time, 20 days provided by 5 C.F.R. § 1202.22. We do not think any legal obligation to give such a notice exists when the appeal right is not in jeopardy of being lost by failure to exercise it in speedy fashion. That appears to be the case with the question of application for immediate annuity. If we are right, it can be applied for even now. Edgerton does not need any relief or excuse for his failure to act in a more timely fashion. On the other hand, we do not think the agency could have been expected to intuit that Edgerton wanted an adverse action appeal and needed instruction when what he continuously said he wanted was early retirement. Before he could expect any instruction respecting the MSPB, he had to let the agency know what he wanted. *McCormack v. United States,* 204 Ct.Cl. 371 (1974).

*In McCormack, supra,* the opinion reveals that the claimant did in fact state that he was entitled to severance pay and the agency was apparently expected by the court to intuit that he contended that his resignation was forced. Severance pay is awarded under 5 U.S.C. § 5595 and by subsection (b) is restricted to an employee who

(2) is involuntarily separated from the service, not by removal for cause or charges of misconduct, delinquency, or inefficiency.

This is similar but not identical language to that which we must construe here. The OPM is authorized (by delegation from the President), to prescribe regulations for administration of this section, and in 5 C.F.R. § 550.701 and ff, it has done so. They do not provide for a primary determination by the OPM as do those relating to retirement

annuities, however. Apparently a claim for severance pay is an ordinary wage claim and one to be dealt with as any other wage claim in case of dispute. The very next section of the Code is 5 U.S.C. § 5596, the Back Pay Act, which presumably provides the remedies for a wrongful failure to pay severance pay, as any other back pay. In the circumstances, in 1974, the date of *McCormack*, advice to resort to the then Civil Service Commission was doubtless not inappropriate and there was not a sharply different procedure, as there is today with retirement claims. There was therefore not a difference, as there is today, between the advice it would be appropriate to give a claimant for reinstatement and back pay, and one who seeks early retirement.

## Conclusion

In view of the foregoing, the decision of the MSPB denying jurisdiction is affirmed, but without prejudice to the right of Edgerton to take appropriate measures to obtain an early retirement annuity. As to his entitlement to such annuity we express, of course, no opinion.

AFFIRMED.