Notice: This opinion is subject to formal revision before publication in the Federal Reporter or U.S.App.D.C. Reports. Users are requested to notify the Clerk of any formal errors in order that corrections may be made before the bound volumes go to press.

# United States Court of Appeals

FOR THE DISTRICT OF COLUMBIA CIRCUIT

———

Argued May 17, 2004         Decided June 25, 2004

No. 03-7155

VIOLA J. KEYES,
APPELLANT

v.

DISTRICT OF COLUMBIA AND CAROLYN GRAHAM,
DEPUTY MAYOR FOR CHILDREN AND FAMILIES
INTERIM DIRECTOR DEPARTMENT OF HUMAN SERVICES,
IN HER INDIVIDUAL CAPACITY,
APPELLEES

———

Appeal from the United States District Court
for the District of Columbia
(No. 00cv01343)

———

*Michael G. Kane* argued the cause and filed the briefs for appellant.

*Donna M. Murasky*, Assistant Attorney General, Office of Attorney General for the District of Columbia, argued the

———

Bills of costs must be filed within 14 days after entry of judgment. The court looks with disfavor upon motions to file bills of costs out of time.

cause for appellee. With her on the brief were *Robert J. Spagnoletti*, Attorney General for the District of Columbia, and *Edward E. Schwab*, Deputy Attorney General, Office of Attorney General for the District of Columbia.

Before: EDWARDS, SENTELLE and ROGERS, *Circuit Judges*.

Opinion for the Court filed by *Circuit Judge* ROGERS.

ROGERS, *Circuit Judge*: Viola J. Keyes appeals the grant of summary judgment to the District of Columbia and her former supervisor Carolyn Graham on the ground that they violated her civil rights and other statutory and constitutional rights in taking termination action against her. Because we conclude that Ms. Keyes left District government service voluntarily, and because she conceded that the voluntariness issue is dispositive of her claims, we affirm the judgment.

## I.

Viewing the evidence and making all justifiable inferences in the light most favorable to the non-moving party, *see* Fed. R. Civ. P. 56; *Whitbeck v. Vital Signs, Inc.*, 116 F.3d 588, 592 (D.C. Cir. 1997) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)), reveals the following. In 1995, Viola J. Keyes, a civil servant holding multiple advanced degrees who had served the District of Columbia in management-level positions for over two decades, was appointed Chief of the Office of Investigations and Compliance ("OIC") of the Department of Human Services ("DHS"). As Chief, she "served as the sole official responsible for investigations of fraud, waste and abuse by employees in all Department of Human Service Programs, including, but not limited to the Mental Retardation and Developmental Disabilities Administration" ("MRDDA"). In 1999, the *Washington Post* published a series of articles reporting that the District government had failed to ensure proper treatment of MRDDA "customers," specifically, the mentally disabled citizens whose care was entrusted to the District government. The *Post* further reported that "DHS hasn't investigated a single death of a retarded person since at least 1993." *See* Katherine Boo, *System Loses Lives and Trust*, Washington Post, Dec. 5,

1999, at A1. Contrary to the *Post*'s reporting, under Keyes' supervision the OIC had investigated several deaths. However, outside investigators commissioned by the United States Department of Justice and an internal DHS review identified systemic problems similar to those reported in the *Post*.

On January 18, 2000, appellee Carolyn Graham, then the Interim Director of DHS, gave Keyes "advance notice of *at least* fifteen (15) calendar days" of her proposed removal as Chief of OIC (emphasis added). Director Graham based her decision on Ms. Keyes' "negligence in the performance of official duties," including her failure to have OIC conduct comprehensive investigations of MRDDA customer deaths. The notice informed Ms. Keyes of her right to an adversarial hearing and to representation by counsel. The letter further stated that Ms. Keyes could, within five days, file a written defense. The notice made clear that no final decision would issue until review of Ms. Keyes' appeal was complete.

On January 24, Ms. Keyes submitted a lengthy response to the charges prepared with the assistance of her private counsel. On January 27, she met with a District of Columbia Office of Personnel specialist, whom she had known since 1984, in order to determine whether she would be off the payroll after the fifteen day notice period, even if she were still fighting the proposed termination. Ms. Keyes was confused, because in her twenty-seven years' experience in the District government, employees were always given thirty days advance notice of an adverse action. The personnel specialist told Ms. Keyes that she would be off the payroll at the end of the fifteen day period, and that it was unclear when a hearing on Ms. Keyes' termination would take place. Recommending that Ms. Keyes take "early-out" retirement, which would provide her with income while she awaited her hearing, the personnel specialist assured Ms. Keyes that she would be able to continue challenging the charges even after her retirement. The personnel specialist further advised Ms. Keyes that she would be ineligible for early-out retirement after she was officially terminated, because she would no longer be a District government employee.

Based on this personnel advice, Ms. Keyes on January 27, 2000 completed a "Request for Personnel Action" form, on which she explained her resignation from District government employment as, "I have no choice based on false allegations" and "Early Out Retirement." On the Request, she indicated February 3, 2000 as the effective date of her retirement. The following day, January 28, Ms. Keyes took custody of her termination-related files from her private counsel, whom she discharged. When the District government processed Ms. Keyes' Request, it made her retirement effective February 1. On February 8, Director Graham wrote Ms. Keyes that, "[a]s a result of your retirement, no further action will be taken with regard [to your proposed termination]." Similarly, the official responsible for conducting Ms. Keyes' termination hearing wrote her on February 23 that, as a result of her retirement, "the proposal to remove you from [your] position is now moot and a decision from me is not necessary."

On June 9, 2000, Ms. Keyes filed a suit against the District of Columbia and several of its officials, alleging they had violated her civil rights under 42 U.S.C. § 1983 by retaliating against her for her First Amendment-protected speech; by depriving her of her property interest in her job without substantive and procedural due process; by infringing on her liberty interest without due process; and by denying her equal protection of the laws. She also alleged the violation of the District of Columbia's whistleblower statute, D.C. Code § 1–616.13 (now codified at D.C. Code § 1–615.53). The district court granted summary judgment for the District of Columbia and Director Graham (together, "the District"), the only remaining defendants, upon determining that each of Ms. Keyes' claims depended on her retirement being involuntary, and that, given the undisputed facts, no reasonable jury could find that her resignation was involuntary as a result of the District's misrepresentations. The district court denied Ms. Keyes' motion for reconsideration, *see* Fed. R. Civ. P. 59(e), refusing to consider her argument that she resigned under duress, because she had "mention[ed] duress only in passing and le[ft] any possible duress 'argument' entirely undeveloped." The court also refused to reconsider its deter-

mination that the voluntariness of Ms. Keyes' resignation was dispositive of all her claims, because she had previously conceded that this inquiry was determinative.

## II.

On appeal, Ms. Keyes contends that the district court erred in granting summary judgment because it proceeded on the basis that she had retired voluntarily. According to Ms. Keyes, because her retirement was not effective until the day after her termination, her discharge was involuntary and occurred without a pre-termination hearing. She further maintains both that her retirement was the result of duress induced and misrepresentations made by District government personnel, and that the retirement voluntariness issue was not dispositive of her other claims. The court reviews *de novo* the grant of summary judgment, *see Tao v. Freeh*, 27 F.3d 635, 638 (D.C. Cir. 1994), which is proper only where there are no genuine issues of material fact and judgment is proper as a matter of law. *See id*. at 638. Our review of the denial of reconsideration is for abuse of discretion. *See Anyanwutaku v. Moore*, 151 F.3d 1053, 1058 (D.C. Cir. 1998). We first address several threshold matters, and then consider whether Ms. Keyes has raised a material issue of disputed fact concerning whether her retirement was involuntary as a result of duress or her employer's misrepresentations.

## A.

As an initial matter, Ms. Keyes cannot prevail on the basis that, contrary to the district court's conclusion, the issue of the voluntariness of her departure from government service is not dispositive of all her claims. As the District notes, Ms. Keyes failed to argue in her first appellate brief that the district court abused its discretion in denying her motion for reconsideration. Ms. Keyes' initial brief mentions only twice her motion for reconsideration and the district court's resulting memorandum opinion, both times in a cursory fashion without any argument. *See* Appellant's Br. at 2 (Jurisdictional Statement), 3 (Statement of the Case). Arguments raised belatedly in her reply brief do not remedy a failure to address

the issue earlier. *See Rollins Envtl. Servs. (NJ) Inc. v. United States EPA*, 937 F.2d 649, 652 n.2 (D.C. Cir. 1991). Under the circumstances, where the District has been denied an opportunity to respond in its brief, the court declines to consider the issue. *See Washington Legal Clinic for the Homeless v. Barry*, 107 F.3d 32, 39 (D.C. Cir. 1997). In any event, a review of the record, *see, e.g.*, Ms. Keyes' Opposition to Defendants' Motion for Summary Judgment at 7, in which Ms. Keyes addresses the voluntariness issue as a threshold question immediately following her discussion of the standard of review, indicates that the district court did not abuse its discretion when it concluded that Ms. Keyes "conceded that the voluntariness issue was dispositive of her other claims; she cannot now argue that the issue is not dispositive simply because of an unfavorable ruling."

Thus, unless this court concludes that Ms. Keyes left her job involuntarily, the court cannot reach the substance of her claims. One route to characterizing her departure from District government service as involuntary is her contention on appeal that, because the effective date of her retirement was one day after the date she maintains she was terminated according to the terms of Director Graham's letter, she was discharged without a pre-termination hearing. While this approach would appear to fly in the face of the plain language of the termination notice, which afforded her "at least" fifteen days, the court does not reach the merits of her argument. It is not properly before the court because it was not raised in the district court. *See District of Columbia v. Air Florida, Inc.*, 750 F.2d 1077, 1084 (D.C. Cir. 1984). Hence, as she cannot show that she was actually terminated, the only question is whether she has raised a material issue of fact that, because her resignation by retirement was involuntary, her retirement was effectively a termination.

Ms. Keyes' contention that her retirement was involuntary is based on two alternative theories: a theory of duress caused by District government officials falsely accusing her of malfeasance in office, and a theory of misrepresentations based on misleading personnel information from District officials. Simply put, for duress she maintains that because

there was "no factual support for any of these allegations and
. . . some of them were outright falsehoods, the termination
letter lacked good cause when it stated, 'The aforementioned
failures on your part constitute the on-duty or employment-
related act or omission that interfered with the efficiency or
integrity of government operations.'"  Appellant's Br. at 34.
Alternatively, she maintains that she was given "bad informa-
tion" about the effect of taking early-out retirement on her
efforts to fight the charges against her.  She concludes that
she relied on these misrepresentations in deciding to retire,
and therefore her retirement was involuntary.  The District
responds that she waived her duress claim, and, in any event,
has not satisfied the requirements for such a claim.  The
District further maintains that her retirement was voluntary
because, in light of undisputed facts, the district court did not
err in finding she could not have been misled by any incorrect
information.

### B.

It is doubtful that Ms. Keyes properly raised and preserved
a claim of duress in the district court.  In opposing the
District's motion for summary judgment, she scarcely men-
tioned duress, and she never fleshed out any coherent theory
to support the claim.  She wrote simply that, "In addition, the
evidence also shows that Ms. Keyes resigned under duress as
a result of the false allegations."  Opp'n to Defs.' Mot. for
Summ. J. at 7.  Instead, she argued only her misrepresenta-
tion theory.  Thus, it is no mystery why the district court, in
granting summary judgment, determined that "[a]side from
her 'misrepresentation theory,' [Ms. Keyes] has provided no
other legal basis, such as actual duress, to support her theory
that her retirement was involuntary."  To avoid summary
judgment, Ms. Keyes was required to "set forth specific facts
showing that there is a genuine issue for trial."  Fed. R. Civ.
P. 56(e); *see* 10A C. Wright, A. Miller, & M. Kane, *Federal
Practice and Procedure* § 2719 (1998).  Her failure to include
a duress theory in her opposition precluded her from arguing
it in her motion for reconsideration, *see Kattan v. District of
Columbia*, 995 F.2d 274, 276 (D.C. Cir. 1993), and this court
does not normally consider arguments improperly raised in

the district court. However, even assuming that Ms. Keyes properly raised a claim based on duress, the record only establishes that she faced a hard choice in electing to retire, not duress.

For a resignation to be rendered involuntary on account of duress, three criteria must be met: "[1] an agency imposes the terms of an employee's resignation, [2] the employee's circumstances permit no alternative but to accept, and [3] those circumstances were the result of improper acts of the agency." *Schultz v. United States Navy*, 810 F.2d 1133, 1136 (Fed. Cir. 1987); *see Edgerton v. Merit Sys. Prot. Bd.*, 768 F.2d 1314, 1317 (Fed. Cir. 1985). However, "a retirement request initiated by an employee is presumed to be a voluntary act," *Schultz*, 810 F.2d at 1135, and "where an employee is faced merely with the unpleasant alternatives of resigning or being subject to removal for cause, such limited choices do not make the resulting resignation an involuntary act." *Id.* at 1136. Ms. Keyes' appellate brief dwells on only the third of the *Schultz* criteria. Viewing the evidence in the light most favorable to her and assuming that District government officials acted improperly in proposing to terminate her, thereby satisfying the third criterion, Ms. Keyes has not established either of the first two criteria. On the contrary, the evidence shows that Ms. Keyes was confronted with a difficult choice — i.e., whether to remain an employee and continue to fight the charges or to take early-out retirement and be done with it — but not duress, in deciding to retire. If the charges against Ms. Keyes were baseless, as she maintains, she could have retained her position and successfully defended herself at the hearing she had requested. Or she could have retired, as she did, after nearly three decades with the District government. Although choosing between these options may have been difficult, it was a voluntary decision nonetheless. No reasonable jury could find she retired under duress.

## C.

Her alternative misrepresentation theory ultimately fares no better. Like the decision of the district court, our analysis

is guided by *Stone v. University of Maryland Medical System Corp.*, 855 F.2d 167 (4th Cir. 1988). There the Fourth Circuit held that "a resignation may be deemed involuntary if induced by the employee's reasonable reliance on her employer's misrepresentation of a material fact concerning the resignation." *Id.* at 174; *see Scharf v. Dept. of the Air Force*, 710 F.2d 1572, 1575 (Fed. Cir. 1983). The court rejected the argument that the resignation of the Chief of the Division of General Surgery at a state university hospital was involuntary as a result of university officials' misrepresentation that they could immediately expel him from the hospital's medical staff if he did not resign on the spot. *Stone*, 855 F.2d at 171, 176. The court held that no reasonable jury could find that Stone had reasonably relied on this threat in resigning, because, as a sophisticated, well-educated doctor with three decades of service at teaching hospitals, where he had supervised numerous medical staff members, he was familiar with hospital bylaws, which precluded such summary actions. *Id.* He could not have reasonably resigned without consulting them, and because his reliance on the university officials' misrepresentations was therefore unreasonable, his resignation could not be deemed involuntary. *Id.*

Ms. Keyes proffered evidence that she was told by a District government personnel specialist that she could retire and continue to fight the charges against her. The specialist also told her she would be off the payroll after the fifteen day notice period. Furthermore, Director Graham's letter stated that Ms. Keyes was being given only fifteen days' notice of her proposed termination, even though in Ms. Keyes' experience thirty days was the norm. These misrepresentations are material because they concern the consequences of her resignation or the alternatives thereto. *See id.* at 174; *Covington v. Dept. of Health & Human Servs.*, 750 F.2d 937, 942 (Fed. Cir. 1984). But assuming the truth of these claimed misrepresentations, for the first two of which we must rely exclusively on Ms. Keyes' declaration that fails to describe adequately the context in which the specialist's advice was given, the district court correctly concluded, on the record at hand, that no reasonable jury could find that Ms. Keyes was

misled. She had received written notice of the proposal to remove her and of her right to administrative review of that proposal; she was represented by private counsel; and, after meeting with the personnel specialist, she had nearly a week to decide whether to retire before the earliest date on which her termination could have become effective. Under the circumstances, Ms. Keyes could not have reasonably relied on the incorrect statements. Like the supervising physician in *Stone*, Ms. Keyes was in an unusually good position to know that the information could not be correct. She had been a District government employee for twenty-seven years, had served in senior positions for most of that time supervising numerous employees, and was knowledgeable about personnel rules. Critically, she was also represented by private counsel, whom she does not claim was unfamiliar with District personnel laws, and who could advise her on such matters, including any personnel issues with which she might be unfamiliar. Additionally, after receiving the notice and speaking with the personnel specialist, she had ample time — fifteen and six days, respectively — to confirm the accuracy of the information. A person in Ms. Keyes' position could not reasonably be misled by the misinformation. If, as she claims, she was confused, she should not have resigned on the basis of the representations without verifying them with her attorney or perhaps even with the decisionmakers or the regulations themselves.

Ms. Keyes relies on *Cocome v. District of Columbia Lottery and Charitable Games Control Board*, 560 A.2d 547 (D.C. 1989), for the proposition that, where an employee is misled about her rights, her retirement must be deemed involuntary. In *Cocome*, the court was reviewing an agency action under the plainly erroneous standard, *see id.* at 550, which is a more deferential standard than *de novo* review. Nothing in *Cocome* raised serious doubts about the reasonableness of the employee's reliance on his supervisor's misrepresentations. Mr. Cocome, who at the time of his retirement was Chief of the Charitable Games Division of the Lottery Board, had worked for the District government for less than two years, was not well-acquainted with its person-

nel rules, had inadequate time — less than one day — to verify his supervisor's representations and to consider whether to resign, and consulted counsel who was unfamiliar with District of Columbia personnel law and who, because of the short time period, was unable to consult with the relevant decisionmakers or gain access to pertinent materials. *See id.* at 548–49. Given Ms. Keyes' very different circumstances, her reliance on *Cocome* is misplaced and does not support her claim that her employer's misrepresentations rendered her resignation involuntary.

Accordingly, because Ms. Keyes has failed to present a material issue of disputed fact that her retirement was involuntary, either as a result of duress or her employer's misrepresentations, and because the court declines to resolve her belated contentions that her other claims do not hinge on the voluntariness of her retirement, we affirm the grant of summary judgment for the District and Director Graham.